IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

THAI L.[1],                          )
                                     )
                  **Plaintiff,**     )
                                     )
v.                                   )          Civil Action No. 7:19-CV-708
                                     )
ANDREW SAUL,                         )
Commissioner of Social Security,     )
                                     )
                  **Defendant.**     )


## MEMORANDUM OPINION

Plaintiff Thai L. ("Thai") filed this action challenging the final decision of the

Commissioner of Social Security ("Commissioner") finding him not disabled and therefore

ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42

U.S.C. §§ 401–433.  Thai alleges that the Administrative Law Judge ("ALJ") erred by failing to

properly perform a function-by-function analysis of his limitations arising from his hand, wrist

and shoulder impairments, and failing to properly weigh his subjective allegations. I conclude

that substantial evidence supports the Commissioner's decision in all respects.  Accordingly, I

**DENY** Thai's Motion for Summary Judgment (Dkt. 14) and **GRANT** the Commissioner's

Motion for Summary Judgment (Dkt. 18).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Thai failed to demonstrate that he was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review

requires the Court to "look[] to an existing administrative record and ask[] whether it contains

'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139

S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat

less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations

omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at

1154, and the final decision of the Commissioner will be affirmed where substantial evidence

supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Thai filed for DIB in March 2016, claiming that his disability began on February 28,

2007, due to pain in his right shoulder, hand and wrist, depression, high blood pressure and gout.

R. 16, 200, 226. Thai's date last insured was December 31, 2012; thus, he must show that his

disability began on or before this date and existed for twelve continuous months to receive DIB.

R. 22, 24; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

The state agency denied Thai's applications at the initial and reconsideration levels of

administrative review. R. 83–112. On March 13, 2018, ALJ Michael Dennard held a hearing to

consider Thai's claims for DIB. R. 60–82. Counsel represented Thai at the hearing, which

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

included a Vietnamese interpreter and testimony from vocational expert Gerald Wells. On

August 20, 2018, the ALJ entered his decision analyzing Thai's claims under the familiar five-

step process[4] and denying his claim for benefits. R. 16–34.

The ALJ found that Thai was insured at the time of the alleged disability onset and that

he suffered from the severe impairments of right wrist fracture, carpal tunnel syndrome,

degenerative changes and right shoulder tear. R. 19. The ALJ determined that these impairments,

either individually or in combination did not meet or medically equal a listed impairment. Id.

The ALJ concluded that Thai retained the residual functional capacity ("RFC") to perform light

work, except that he can occasionally operate hand controls with the right hand; occasionally

climb ladders, ropes, or scaffolds; occasionally crawl; frequently reach overhead to the right and

perform all other reaching to the right; frequently handle items with the right hand and frequently

finger with the right hand; frequently climb ramps and stairs; frequently work at unprotected

heights; and frequently operate a motor vehicle. R. 20.

The ALJ determined that Thai would be unable to perform his past relevant work as a

sheet rock installer, wooden frame builder, and cabinet maker, but that he could perform jobs

that exist in significant numbers in the national economy, such as cleaner, hand presser, and

folder/sorter. R. 32–34. Thus, the ALJ determined that Thai was not disabled. R. 34. Thai

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

appealed the ALJ's decision and the Appeals Council denied his request for review on August 30, 2019. R. 1–4.

## ANALYSIS

Thai alleges that the ALJ erred by finding that he could perform light work, failed to consider whether he would need to change positions, take breaks and be absent from work due to his pain, and failed to properly weigh his subjective complaints.

Thai is Vietnamese and speaks little English. R. 62. He previously worked as a production line worker and cabinet maker, and last worked installing sheetrock. R. 67–68.  He stopped working in February 2007. Id.

Thai fractured his right wrist in a fall while hanging sheetrock in June 2006. R. 758.  In December 2006, Thai had improved mobility of his right hand, wrist and fingers, but decreased grip strength. R. 470. X-rays showed a healed fracture in good position with no evidence of arthritic changes (R. 471) and an MRI reflected a non-united fracture with some irregularity in the joint surface, but nerve conduction testing was "essentially normal." R. 469.

Thai sought orthopedic treatment with Hugh Hagan, M.D., in February 2007, for pain in his right wrist. R. 468.  Dr. Hagan performed an arthroscopy and denervation of the right wrist on April 24, 2007. R. 846–47.  In June 2007, examination of Thai's right wrist showed "near complete" restoration of flexion and extension, full finger flexion and intact sensation. R. 464. Thai had palpable crepitus and pain in the radiocarpal joint with flexion and extension. Id.  Dr. Hagan's impression was post-traumatic arthritis secondary to articular incongruity and cartilaginous injuries to the distal radius and lunate, and he recommended a functional capacity

evaluation. Id.  Dr. Hagan wrote a letter stating that Thai could return to light work activity that day with no use of his right wrist or hand. R. 464–65.

Thomas Ellexson, MSPT, performed a functional capacity evaluation of Thai on July 2, 2007, which reflected good effort, and found that Thai was limited to lifting 25 pounds to shoulder height, 20 pounds for overhead lifting, and five pounds for unilateral lifting with his right hand. R. 750. Thai had limited use of the right hand for handling and use of tools due to increased pain and difficulty with repetitive wrist and hand movements. Id.

Thai followed up with Dr. Hagan on August 3, 2007, and his physical examination reflected tenderness at the radiocarpal joint dorsally. He had excellent finger motion, intact sensibility, good forearm rotation, and wrist flexion and extension of about 45 to 50 degrees. R. 461. Dr. Hagan discussed the possibility of vocational training for a job commensurate with Thai's capabilities, or a wrist fusion. Dr. Hagan recommended a second opinion prior to undergoing a fusion operation. Id.  Thai received a second opinion from William Hooper, M.D., at Virginia Orthopedic in September 2007. Dr. Hooper's impression was post-traumatic arthritis of the right wrist. R. 757. He concluded that a total wrist fusion was a reasonable option. Id.

On December 10, 2007, Dr. Hagan wrote a letter "To Whom It May Concern," noting that Thai was scheduled for a fusion of his right wrist and prophylactic carpal tunnel release on December 17, 2007, and will be unable to work for eight weeks post-operation, and would be limited to one-handed work for an additional eight weeks. R. 441–42. Dr. Hagan predicted that Thai could return to regular work four to five months post-operation if he is stable and strong. Id.

On December 17, 2007, Thai underwent a right wrist fusion and prophylactic carpal tunnel release. R. 439–40.  X-rays taken a few weeks post-surgery showed excellent alignment of the plate and screws, and Dr. Hagan noted that Thai was "slowly getting better." R. 421–22.

Thai participated in occupational therapy and continued to improve.  In March 2008, Thai reported using his right hand/arm for gardening and light housework, he performed bicep curls up to 8 pounds, and increased his bilateral box carry to 23 pounds. R. 385.  On April 7, 2008, Dr. Hagan recommended a second functional capacity evaluation to assess Thai's capability for work. R. 378.

On August 28, 2008, Thai underwent a functional capacity evaluation, which found that Thai could work at the sedentary to light-medium physical demand level. R. 656–61. The evaluator noted partial-sub-maximal effort and questionable accuracy of data for maximal vocational placement. R. 656. The evaluator stated that most of the inconsistencies noted in the evaluation involved lifting. Id.  Thai's material handling ability was between 3 and 25 pounds, depending upon the type and frequency of lift. Dr. Hagan reviewed the functional capacity evaluation and recommended that Thai be considered for vocational retraining in a job that did not have the large physical demands of a drywall hanger. R. 375.

Thai returned to Dr. Hagan over a year later, October 8, 2009. R. 369.  Dr. Hagan's impression was successful wrist fusion with some ulnar-sided wrist pain, and that Thai could work within the limitations outlined in the August 2008 functional capacity evaluation. R. 370.

In December 2009, Thai complained to Dr. Hagan of right wrist pain and right shoulder pain that developed over the previous six months. R. 364. Upon examination, Thai had lateral subacromial tenderness and pain with resisted range of motion of the right shoulder. Id. Dr. Hagan injected Thai's right wrist and referred him to physical therapy to strengthen his shoulder.

R. 365.  Thai continued to complain of pain in his right shoulder and was treated with injections. R. 358.

An MRI taken of Thai's shoulder on September 23, 2010, reflected a superior glenoid labral tear extending to the biceps anchor and mild osteoarthritis of the acromioclavicular joint. R. 532.  Thai underwent a right shoulder arthroscopy with SLAP repair on January 11, 2011. R. 850.  Thereafter, he had physical therapy with gradually increasing range of motion in his right shoulder but no reported change in pain level. R. 331.  Thai had improved right shoulder strength in June 2011 but reported pain with overhead evaluation. R. 316.  Thomas K. Miller, M.D., examined Thai 5 ½ months post operation and determined that Thai's recovery "plateaued," and recommended a functional capacity evaluation. R. 317.

Dr. Hagan examined Thai's right wrist in August 2011. Thai complained of pain and popping of his right wrist with movement. R. 315. Dr. Hagan recommended hardware removal surgery, but Thai was not interested. R. 316.

Thai had a third functional capacity evaluation on August 23, 2011. R. 608–29.  The evaluation reflected invalid results due to submaximal effort. R. 608– 09. The results reflected that Thai can work at the sedentary physical demand level, handling between 2 to 15 pounds, depending upon the type and frequently of lift, although the evaluator noted questionable accuracy of data for maximal vocational placement. R. 609. The evaluator noted marked inconsistencies throughout testing, particularly with the material handling and lifting portions of testing. Id.  The evaluator recommended aggressive efforts to maximize Thai's benefit from

strengthening and functional specific training, and noted that he qualified for sedentary labor,

"with higher extrapolation left to the physician." Id.

On January 27, 2012, Dr. Hagan sent a note to Workers' Compensation that Thai was

restricted to no use of his right arm indefinitely. R. 311. On March 26, 2012, Thai was referred to

Brian Torre, M.D., for an independent medical evaluation. R. 633.  Dr. Torre examined Thai and

noted that he "has residual right shoulder pain of unclear etiology following an arthroscopic

labral repair.  There is no clear mechanism of ongoing pain in the right shoulder.  The claimant

has a painful distal radioulnar joint of his right wrist.  He also has what may be slight tendon

impingement from the plate or screws.  His symptoms, however, are disproportionate to the

physical findings, and his effort demonstrated in the examination is not consistent with what his

apparent capabilities should be." R. 634.  Dr. Torre did not find additional treatment indicated

for the right shoulder and found that steroid injections may help Thai's right wrist.  Dr. Torre

stated,

> [i]t is not possible to accurately determine what the claimant can actually do, because his complaints are disproportionate to his physical observations, and his functional testing is markedly effected by self-limiting behavior.  The only way to classify his work capability would be with a functional capacity evaluation. ..If it is found that his responses are invalid and that his behavior and performance appears inappropriate, then one is left to conclude that there are no clear objective limitations and that the claimant could be released to unrestricted activities.  One clear physical limitation, however, would be imparted by his wrist arthrodesis which would obviously not allow wrist flexion or extension maneuvers.

R. 635.

Thai underwent another functional capacity evaluation on June 21, 2012, which again had

invalid results due to symptom exaggeration. R. 852.  The evaluator determined that Thai could

lift a minimum of 15 pounds occasionally, 10 pounds frequently, and 5 pounds constantly, but

that those results were based on invalid data not indicative of maximal abilities. Id. The evaluator

noted, "[w]orker exhibited marked inappropriate illness behaviors thwarting ability of test to report his true function. Recommended placement on expected abilities with diagnostic findings- LIGHT shoulder and above; MEDIUM to waist." Id.

In May 2013, Thai sought treatment for his right shoulder with Brent Johnson, M.D. R. 308. He reported worsening pain for the last 4 months but no new injury. He had 5/5 strength in his right shoulder with some pain, and 5/5 strength with resistance to external rotation without pain. R. 309. His motor and sensation in both upper extremities were intact symmetrically. Id. Dr. Johnson's impression was chronic right shoulder pain with persistent restricted motion, and he recommended a pain management consultation. R. 309.

On December 30, 2013, pain management physician Alfred Beshai, M.D., evaluated Thai and recommended physical therapy after an ultrasound-guided injection of the right shoulder. R. 306.

Thai followed up with Dr. Hagan on February 2014, and his examination reflected pain to palpation over the middle finger extensor and pain with flexion and extension of the middle finger, but full range of motion of the fingers and no pain to palpation over the wrist. R. 300. The impression was continuing right wrist-hand pain and swelling status post wrist fusion that were likely due to retained hardware, but Thai refused to undergo another surgical procedure to remove the hardware. R. 300.

Dr. Torre completed a second independent medical evaluation of Thai on January 26, 2015. R. 572. Dr. Torre noted that Thai had mild discomfort in his right wrist at the distal radioulnar joint that appears to be minimal from a symptomatic and functional standpoint. R. 574.  He also had some snapping that appeared to be carpal tunnel with finger flexion and extension. Dr. Torre noted that Thai's complaint of numbness does not appear to be valid nor

objectively measurable due to invalid responses. Dr. Torre noted that he could not produce

tenderness or evidence of plate impingement in the dorsal wrist to any degree that would prompt

removal of the plate. Id. Dr. Torre found that Thai demonstrated an exaggerated pain response in

his right shoulder that is not considered objectively valid. Dr. Torre stated, "[e]ven with gravity

removed, however, he demonstrates symptom exaggeration and inappropriate behaviors on

examination of the right shoulder." Id. Dr. Torre concluded,

> [d]ue to the invalidity of the claimant's last two FCEs, it is difficult to accurately
> predict the work capacity of the claimant. At the very least, the claimant could
> perform sedentary work. Based on my examination, I feel that the claimant could
> perform up to light physical demand level and possibly light-medium level. Based
> on his shoulder complaints, it does not appear that he would be able to perform
> any activities above waist level, although the validity of his shoulder complaints
> remains questionable.

R. 575.

On April 25, 2016, state agency consultant Michael Koch reviewed Thai's records and

determined that he was capable of frequently lifting/carrying 10 pounds, occasionally

lifting/carrying 20 pounds, and sitting and standing 6 hours in an 8-hour workday. R. 92. He

found that Thai is limited to occasional crawling, pushing/pulling with the right upper extremity

and climbing ladders, ropes and scaffolds. R. 92–93. On December 31, 2012, state agency

physician Thomas M. Phillips, M.D., reviewed Thai's records and agreed with Mr. Koch's

findings. R. 106–07.

The ALJ reviewed Thai's medical records and testimony in detail. R. 21–29. The ALJ

noted that Thai underwent two wrist surgeries and continued to complain of pain in his right

wrist. R. 29. The ALJ noted, however, that the record indicates that Thai's wrist problems were

not so intense as to limit him below the light level, noting that he was lifting five-pound weights

with his right upper extremity a few months after surgery. The ALJ noted that Thai turned down

a nail job due to chemical exposure, not the use of his wrist, and indicated interest in being an

electrician. The ALJ also noted that Thai began exaggerating his symptoms after his wrist fusion

surgery, citing the multiple functional capacity exams and independent medical examinations

reflecting exaggerated symptoms. R. 30. The ALJ noted that those examinations found that Thai

"could at least perform the sedentary level, but given his poor effort, they suggest he could

perform at the light level, as the examiners tend to indicate." R. 30.

Regarding Thai's right shoulder, the ALJ noted that he had surgery in October 2010, and

the records indicate that his shoulder did not cause much discomfort and he took no pain

medications after receiving physical therapy in 2011. R. 30.  In December 2011, Dr. Hagan noted

no consistent mechanical causes for Thai's complaints, and no range of motion limitations.

R. 311–12. Further, functional capacity examinations in 2012 and 2015 reflected invalid results.

Id.  The ALJ noted that the evidence does not indicate that Thai's right wrist issues or shoulder

issues limited him below the light level for more than 12 months. The ALJ also found that Thai's

reaching was only somewhat limited and mostly resolved.

The ALJ reviewed the various work restrictions and limitations set forth in Thai's

orthopedic findings, functional capacity evaluations and independent medical examinations. The

ALJ gave little weight to the temporary restrictions provided after Thai received treatment or

surgery due to their temporary or uncertain nature. See R. 30, 378, 464, 466, 475. The ALJ also

gave little weight to various opinions in the record that Thai could return to work in August 2006

and October 2006 with no restrictions. R. 30. The ALJ gave little weight to Dr. Hagan's opinion

in August 2007 that Thai could not use his right wrist until further notice, because Dr. Hagan

also noted on examination that Thai lacked strength to do his former work but not all work and

recommended training for other jobs. R. 30, 461.  The ALJ gave some weight to Dr. Hagan's

conclusion that Thai could not return to dry wall work (R. 378), and limited weight to Dr.

Hagan's opinion that Thai should not work in the cold due to wrist pain. R. 31, 651.

The ALJ reviewed Dr. Hagan's statement to Worker's Compensation in January 2012

that Thai should not use his upper right extremity indefinitely (R. 311) and gave it little weight,

noting that Dr. Hagan also found inconsistencies in Thai's complaints and did not recommended

limiting Thai's right upper extremity use in previous treatment visits. R. 31.

The ALJ gave Thai's various functional capacity evaluations some weight, noting that

Thai's wrist issues improved after his second surgery, his right shoulder issues improved over

time, and he had inconsistent and invalid results and symptom exaggeration. R. 31–32.  The ALJ

gave little weight to Dr. Torre's conclusion that Thai could not perform wrist flexion or

extension maneuvers, noting that Thai had given exaggerated symptoms, and his orthopedic

findings did not indicate that he could not perform flexion or extension. R. 32.

The ALJ gave significant weight to the state agency assessments finding that Thai could

perform light work with limited pushing/pulling with his right upper extremity, noting that even

with invalid results on his functional capacity evaluations, Thai was given at least a sedentary

level of ability. R. 32.  Further, physical examinations of Thai's right wrist after surgery reflected

mild findings, and his shoulder examinations showed some range of motion limitation. The ALJ

noted that Thai did not allege that he was limited from all overhead reaching or reaching in

general. R. 32.

The ALJ determined that Thai could perform light work with occasionally operating hand

controls with his right hand and frequently reaching overhead to the right and all other reaching

to the right; frequently handling items with the right hand; and frequently fingering with the right

hand. R. 20. The ALJ explained, "in sum, the above residual functional capacity assessment is

12

supported by some wrist pain but ability to make a nearly complete fist after the claimant's wrist

surgeries, indicating the claimant could lift and carry at the light level, and shoulder issues later

in the record that mainly limited his reaching with the right upper extremity some, and which

would not reduce him below the light level." R. 32.

### Function-by-Function Analysis

Thai asserts that the ALJ's conclusion that he can perform a range of light work is not

supported by substantial evidence. Thai argues that "the consistent FCE testing and objective

testing of plaintiff's medical providers document that contrary to the ALJ's findings, plaintiff

was at less than light exertional level (sedentary) with severely limited use of the right hand and

wrist for more than twelve months." Pl. Br. Summ. J. p. 32. Thai argues that the ALJ misstates

the FCE test results and ignores the findings of his treating providers that he is limited to the

sedentary level and has severely limited use of his right upper extremity. Thai relies heavily upon

the functional capacity evaluations, which state that their results are invalid due to inconsistent

efforts and symptom exaggeration. Thai asserts that the FCE reports consistently found that he

was limited to the sedentary exertional level with occasional use of the right upper extremity

prior to his date last insured (December 2012) and the ALJ's reasons for rejecting these reports

are not supported by substantial evidence. Pl. Br. Summ. J. p. 32.

Thai's arguments simply restate the medical evidence and assert that the ALJ's decision

is not supported by substantial evidence. Attacking whether substantial evidence exists requires

more than simply identifying medical records or statements that are inconsistent with the ALJ's

findings.  A claimant must show that the ALJ used an improper legal standard, did not consider a

relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming

weight of inconsistent evidence overcomes the substantial evidence standard.  The Fourth Circuit

is clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Thai's arguments amount to a request that the Court reweigh the evidence, which I am not permitted to do. The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).

Thai also asserts that the ALJ failed to perform a function-by-function analysis of his impairments, and did not make specific findings regarding whether his impairments would result in episodes of pain requiring him to change positions, take breaks, or be absent from work. Pl. Br. Summ. J. p. 34.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite to specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In <u>Mascio v. Colvin</u>, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" <u>Mascio</u>, 780 F.3d 632, 636 (4th Cir. 2015) (citing <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)). "The <u>Mascio</u> Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." <u>Newcomb v. Colvin</u>, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike the ALJ in <u>Mascio</u>, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include an in-depth comprehensive analysis of Thai's medical records, the medical opinions, and Thai's hearing testimony. R. 21–32.  The RFC sets out Thai's exertional limitations in detail, including specific limitations addressing Thai's use of his right hand. R. 20.  Contrary to Thai's assertions, there is significant evidence in the record supporting the ALJ's conclusion that Thai can perform a range of light work.  Indeed, Dr. Torre stated, "[b]ased on my examination, I feel that the claimant could perform up to light physical demand level and possibly light-medium level." R. 575. Two state agency physicians reviewed Thai's records prior to his date last insured and determined that he was capable of light work. That same evidence supports the ALJ's decision to discount Thai's complaints of disabling pain and limitations.

Thai's assertion that the ALJ filed to make specific findings regarding whether his impairments would result in episodes of pain requiring him to change positions, take breaks, or be absent from work is also unavailing. Thai testified at the administrative hearing that he has constant pain in the right hand and right shoulder, has limited movement and is unable to lift anything heavy with his right hand. R. 69–70, 73. Notably, Thai did not testify that he must change positions, take breaks or be absent from work. The ALJ is not required to make specific findings related to each of Thai's subjective assertions.  See Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020), (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation.).  The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Thai's alleged symptoms, and the medical opinions of record. The ALJ considered Thai's complaints and explained why the evidence did not support greater RFC restrictions. This narrative discussion allows this court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### Claimant's Subjective Allegations

Thai asserts that the ALJ fails to explain how the evidence he cited establishes that Thai's assertions are not fully supported. Pl. Br. Summ. J. p. 39. Thai testified that he continues to have constant pain in the right hand, has limited movement and is unable to lift anything heavy with his right hand. R. 69–70. Thai also testified that he has constant pain in his right shoulder. R. 73.

16

Thai's argument in this section of his brief essentially restates his arguments related to the ALJ's physical RFC findings and function by function analysis, already addressed.  Thai does not identify any subjective complaints that the ALJ failed to consider.  Nor does Thai identify specific instances in this case whether the ALJ improperly applied the legal standards.  Rather, Thai asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[5] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[6] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity,

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[6] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." Id.

Here, the ALJ reviewed Thai's medical history and his subjective allegations in detail and

found that Thai's statements regarding the severity of his limitations were not entirely credible

because they were not fully supported by the objective medical evidence, his treatment history,

or his daily activities.  The ALJ was entitled to find that the objective medical evidence

outweighed Thai's subjective statements, and he provided a sufficient rationale for doing so.  A

reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should

not interfere with that assessment where the evidence in the record supports the ALJ's

conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion

was thorough and applied the proper legal standard, and I will not re-weigh the evidence.

Accordingly, I conclude that the ALJ supported his analysis of Thai's subjective complaints with

substantial evidence, and that Thai can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

The standard this court must follow when reviewing a social security appeal is whether

substantial evidence exists in the record that supports the ALJ's decision. Biestek, 139 S. Ct. at

1154. This standard is not high. Claimant both on brief and in oral argument essentially invites

me to look for evidence from which one could conclude that Thai is disabled. However, the

substantial evidence standard does not allow me to second guess the ALJ, even when the record

contains some evidence that is consistent with a finding of disability.

For these reasons, an order will be entered **AFFIRMING** the final decision of the

Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's

motion for summary judgment, and **DISMISSING** this case from the court's docket.

Entered: February 8, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge